### CROSS *v.* LIVERMORE.

*(Circuit Court, D. Rhode Island. 1881.)*

**1. LETTERS PATENT—STYLOGRAPHIC OR FOUNTAIN PENS—PRELIMINARY INJUNCTIONS.**

A preliminary injunction will be refused where grave doubt exists, on the evidence, whether there has been any infringement, and there is some doubt as to the validity of the patent. Hence, a motion for a preliminary injunction, made by Alonzo T. Cross, as the patentee of letters patent Nos. 199,621 and 227,416, and reissued letters patent No. 9,716, for improvements in stylographic or fountain pens, against Charles W. Livermore, is denied.

In Equity. Motion for preliminary injunction.

*Saml. J. Elder,* for complainant.

*Oscar Lapham* and *Benj. F. Thurston,* for defendant.

COLT, D. J. This is a motion for a preliminary injunction. It is claimed by the complainant that the defendant has been guilty of an infringement of certain patents issued to him for improvements in stylographic or fountain pens. The inventions of the complainant, as set out in his several letters patent, are for certain improved *combinations* of several parts or elements, whereby a more perfect pen is secured.

In entering upon the consideration of a proceeding of this character, we are to bear in mind—*First,* that whenever, upon the facts presented, a fair and reasonable doubt exists as to whether the defendant has actually been guilty of an infringement, or when it does not satisfactorily appear that the complainant is the first and sole inventor of the improvements claimed, a preliminary injunction will be refused. High, Inj. § 606; *Dodge* v. *Card,* 2 Fish. 116; *Parker* v. *Sears,* 1 Fish. 93; *Thomas* v. *Weeks,* 2 Paine, 92. *Second,* that if an alleged infringer uses less than all of the elements of a combination, and substitutes something for the part which he omits, there is no infringement, unless the substitute is a mere mechanical equiv-

alent. *Densmore.v. Schofield*, 4 Fish. 148; *Prouty* v. *Ruggles*, 16 Pet. 341; *Eames* v. *Godfrey*, 1 Wall. 78.

The complainant maintains, in the first place, that the defendant's pen is an infringement of claims 1, 2, and 4 of reissued letters patent No. 9,716, which are as follows:

"(1) In a fountain pen, the combination of a tubular point, a spindle adapted thereto, and connected to an independently-moving spindle carrier, said spindle carrier being adjustable in relation to a fixed part of the pen, whereby the movement of the spindle may be changed, and the wear thereof compensated, as set forth. (2) The combination of the spindle carrier, C, loosely-attached spindle, B, and ink-delivery tube, A, substantially as described. (4) The combination of the spindle carrier, C, spindle, B, and adjusting screw, E, substantially as described."

It is not contended that Cross was the inventor of the principal elements of the fountain pen, such as the air tube, gravitating valve, spindle or needle, etc.; but the improvements worked out by Cross in this patent are, in brief, putting a screw in the upper end of the valve or carrier to regulate the rise of the valve from its seat; putting a screw in the lower end of the valve or carrier to regulate the length of the needle; and attaching the needle to the valve by a swivel joint, to give a freer play to the needle. A glance at the defendant's pen shows that it is different in form and construction. The valve which regulates the supply of ink in the complainant's pen being raised by pressing the point of the spindle or writing pen upon the paper, thus letting in the ink, and which falls by the action of gravity upon its seat, when no such pressure is exerted, thus cutting off the flow, and which was deemed indispensable in all the earlier fountain pens, is done away with in the pen of the defendant. A spiral spring, to which the needle is attached, is substituted, and this spring inserted in a small tube, which is securely held by a supporting post. No screw is attached to the lower end of the spring to regulate the length of the needle, and it is questionable, to say the least, whether the screw at the upper end of the spring, which serves to plug up at that end the small tube which holds the spring, performs the same function as in the complainant's patent.

A combination which includes as one of its principal elements a valve or spindle carrier of the kind described in the above claims in the complainant's invention, can hardly be said to be the same as a combination which dispenses with this, and substitutes another element of entirely different character, not to mention other less important changes in the construction of defendant's pen. Grave doubt,

therefore, exists whether the defendant has been guilty of an infringement of this patent.

The complainant further contends that the defendant's pen is an infringement of the first claim in another patent granted to him, No. 199,621, dated January 29, 1878, which is in the following language:

"I claim as my invention (1) the vibrating pin, D, and spring, F, combined with an air tube, B, case, A, and tube, H, substantially as described."

Just before this the specification states:

"The attachment of the pin, D, to the lower end of the air tube, B, so as to be operated by means of a spring, substantially as shown and described, being the gist of my improvement."

The improvements here made are the substitution of the spring for the valve, and the attachment of the pin to the air tube in the manner described in the patent.

It cannot be denied that the defendant's pen much more nearly approaches this construction than that of the complainant's first patent, and the question of infringement is therefore a closer one. The defendant's pen has a vibrating pin or needle, which is operated by means of a spiral spring; but the pin, instead of being attached to the air tube in the manner set out in complainant's patent, is entirely separated from it,—a supporting post, below the air tube, holding firmly a small tube containing the spring, and the upper end of the pin or needle. Can a combination which dispenses with the attachment of the pin to the air tube, and the device by which such attachment is made, and which substitutes for this a supporting post, whereby the pin and spring are cut off entirely from the air tube and the upper section of the pen, be considered an infringement of the complainant's claim?

The defendant, Livermore, derived this supporting post by assignment to him of the patent of G. F. Hawkes, for improvement in fountain pens, No. 236,222, dated January 4, 1881. It is claimed that this construction is superior to the complainant's, because, by being able to entirely disconnect the upper from the lower section of the pen, and by this means to confine the delicate machinery of the spring and pen within the lower section, there is much less liability to injury from exposure when filling, and that it is also more easily cleaned.

If the attachment of the pen to the air tube is a substantive part of the complainant's invention, and if for this part the defendant substitutes something else, which is not a mere mechanical equivalent, viz., the supporting post, there has been no infringement. To say that this attachment is not a material part of the patented combination, considering its importance in the arrangement, and the language of the specification, would, we think, be going too far. At least, the point is sufficiently doubtful to dispose of this motion, whatever may be the final conclusion after a full hearing.

Again, it is charged that the defendant has infringed another patent granted to the complainant, dated May 11, 1880, and numbered 227,416, wherein the claim is,—

"In a stylographic fountain pen, a spindle having a tip of indium, or like hard substance, in combination with a tubular point of comparatively soft metal, the spindle being arranged in the point to project slightly and bear upon the paper, substantially as set forth."

The defendant, in answer to this charge, introduces affidavits seeking to show prior use or knowledge by others before the invention. The complainant, Cross, states in his affidavit "that he is unable to give the exact date of his invention, but it was probably in the spring or summer of 1878." On the other hand, the defendant produces the affidavits of James M. Clark, a manufacturer of fountain pens, and of Charles H. Court, an employe, who swear to a similar use of indium upon other fountain pens prior to the middle of 1877.

James M. Clark says:

"The pens in which the indium-tipped needle was used all had a tubular point, from which the needle projected, composed of metal much softer than the indium, and the needle had an endwise movement, and was arranged in the point to project slightly from or beyond the end of the tubular point and bear upon the paper."

In the affidavit of Charles H. Court we have also a similar description of the use of indium, both statements detailing the same use in substance as that specified in complainant's patent.

Judging from the evidence before the court, we cannot but say that some doubt is thrown upon the validity of this patent. A fuller investigation may, of course, dispel this. While it is unquestionably true that, these things being proved,—namely, a patent, long possession, and infringement,—the party is entitled, *prima facie*, to an injunction; yet even where this is shown the question will be, in *cases of opposing evidence*, whether this right has been displaced by the

respondent. Curtis, Law of Patents, § 414. Long possession, however, can hardly be set up here, nor are former recoveries claimed.

Upon the whole, we are of the opinion that the complainant has not made out a case, under the evidence submitted, that would warrant the granting of a preliminary injunction, and the motion is therefore denied.